**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Wayf Digital Sp. z o.o.,

Plaintiff,

v.

Government Employees Insurance Company,

Defendant.

No. CV-26-00703-PHX-DWL

**ORDER**

In May 2025, Plaintiff Wayf Digital Sp. z o.o. ("Wayf"), a Polish software company, registered the domain name <GEICO.AI> ("the Domain Name"). In response, Defendant Government Employees Insurance Company ("GEICO") filed a Uniform Domain-Name Dispute-Resolution Policy ("UDRP") complaint with the World Intellectual Property Organization ("WIPO"). In January 2026, a WIPO panel ruled in GEICO's favor and ordered the Domain Name to be transferred to GEICO.

Afterward, Wayf initiated this action, seeking declaratory and injunctive relief under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and asked the registrar to postpone complying with the WIPO panel's decision pending the resolution of this action. GEICO, in turn, contacted the registrar to question whether Wayf had complied with the technical requirements necessary to trigger a postponement. The registrar ultimately disregarded Wayf's postponement request and proceeded with the transfer, and Wayf then amended its complaint to add a claim against GEICO for tortious interference with contract.

These developments provide the backdrop for two motions now pending before the Court: first, GEICO's motion to dismiss (Doc. 16); and second, Wayf's motion for a preliminary injunction (Doc. 15). For the reasons that follow, both motions are denied.

## BACKGROUND

I. <u>Factual Background</u>

The following factual allegations, presumed true for purposes of GEICO's motion to dismiss, are derived from Wayf's operative pleading, the First Amended Complaint ("FAC"). (Doc. 10.)

A. **The Parties**

Wayf is a software consultancy and development company co-founded by Pawel Utr and Chris Kraszewski in 2019. (*Id.* ¶¶ 21, 23.) Its principal place of business is Warsaw, Poland. (*Id.* ¶ 16.)

GEICO provides insurance services to consumers in the United States and also offers "overseas coverage through non-affiliated partners." (*Id.* ¶¶ 64-66.) GEICO "owns several U.S. trademark registrations for the mark GEICO" and related marks in connection with its insurance business. (*Id.* ¶ 67.) It "also owns an E.U. trademark for the mark GEICO." (*Id.* ¶ 68.) GEICO does not directly provide insurance services abroad. (*Id.* ¶ 73.)

B. **Wayf's Development Of "Gei & Co."**

In January 2023, Wayf began "developing a platform focused on personalized dietary supplements with a recommendation engine and gift voucher functionality," which eventually morphed into "a B2B-focused corporate gifting platform with health and wellbeing at its core." (*Id.* ¶¶ 2, 31-32.) "Under this concept, corporate clients would purchase gift vouchers for employees, who redeem them through an AI-powered interface that recommends personalized gifts." (*Id.* ¶ 33.) In early 2025, Wayf determined that it would name this gifting platform "Gei & Co." (*Id.* ¶ 38.)

The idea for the name "Gei & Co." arose when Utr "was discussing names for the platform with his life partner," who speaks fluent Mandarin, and his partner "joked that

*dawać* (the Polish word for 'to give') in Mandarin sounds like the English word for 'gay.'" (*Id.* ¶¶ 30, 39.) The "actual word is 给 or *gěi*" in Mandarin. (*Id.* ¶ 40). Utr liked the term because he "anticipated that China, where gift-giving is deeply ingrained in the culture, would be a prime market for" the digital platform. (*Id.* ¶ 46.) Also, "[a]s a member of the LGBTQ community," Utr liked that the word "gei" is "pronounced like the English word 'gay.'" (*Id.* ¶ 47.) "After additional consideration and discussion with others," and inspired by "another top global design and technology company, Work & Co.," Wayf added "& Co." to the digital program's name to "combin[e] the Chinese root" (Gei) with "the classic, trade-related suffix" (& Co.). (*Id.* ¶¶ 48-49.)

C. **The Domain Registration**

In May 2025, Wayf began the process of registering a domain for the gifting project with a commercial domain registrar called Spaceship. (*Id.* ¶ 51.) Domain Name System ("DNS") standards limit the characters allowed in internet domains "to alphanumeric characters and hyphens." (*Id.* ¶ 52.)

On May 8, 2025, Wayf registered the domain name <GEICO.AI> with Spaceship. (*Id.* ¶ 54.) Wayf alleges that "numerous GEICO-formative domain names were available for purchase" at that time. (*Id.* ¶ 53.)

On May 9, 2025, Wayf "registered the domain name <OVERGIVE.COM>" based on "another name it was considering for the platform." (*Id.* ¶ 55.) Both domains were registered with domain privacy services. (*Id.* ¶ 56.) "All major registrars," including Spaceship, "offer a similar privacy service" automatically upon purchase. (*Id.* ¶¶ 57-58.) Domain privacy services are used "for privacy reasons and to avoid the constant communications from marketers who scrape the WHOIS registry for leads." (*Id.* ¶ 56.)

Wayf "has not yet posted a website to <GEICO.AI>." (*Id.* ¶ 63.) Because GEICO does not market or operate on a broad scale in Poland, the rest of Europe, or China, Wayf was unaware of GEICO or its marks before registering the Domain Name. (*Id.* ¶¶ 71-81, 83.) "Because the Domain Name was based on a combination of words" with "no dictionary definition," and "because [Wayf's] principals had never heard of [GEICO],"

Wayf "did not[] search online for other uses" of the term "Geico." (*Id.* ¶ 84.)

D. **The UDRP Action**

On October 31, 2025, GEICO filed a UDRP action with the WIPO Arbitration and Mediation Center. (*Id.* ¶ 86.) That same day, consistent with its internal policies, Spaceship "locked the domain name, thereby prohibiting [Wayf] from utilizing the Domain Name" pending the outcome of the UDRP action. (*Id.* ¶ 87.)

In its WIPO complaint, GEICO accused Wayf of "registering and using its GEICO mark in bad faith." (*Id.* ¶ 88.) GEICO argued that "it is inconceivable that [Wayf] was not aware of [GEICO's] mark when it registered the Domain Name in 2025, in obvious bad faith . . . ." (*Id.* ¶ 89.) GEICO also argued Wayf's use of domain privacy services was evidence of bad faith. (*Id.* ¶ 90.)

On January 20, 2026, the WIPO panel issued its ruling. (*Id.* ¶ 92.) The panel noted that "although there ultimately was some evidence before the Panel that [GEICO] had to some degree a European presence . . . the exact nature of that presence is still not fully clear, and in any event, it appears that this presence may not extend to Poland where [Wayf] is located." (*Id.* ¶ 96.) Nevertheless, the panel stated that it was "'inherently implausible' that a software consultancy and product development company working for international clients would not have conducted at least a simple online search for the term 'Geico' when choosing the domain name." (*Id.* ¶ 97.) The panel also found it "'inherently odd' that a Polish software company would choose to combine a Mandarin term and an English abbreviation for its product name." (*Id.* ¶ 98.)

The panel "indicated that it would want to see *more* documentary evidence to support the factual assertions" made by the parties and "ultimately ruled in [GEICO's] favor, concluding that 'on the balance of probabilities . . . the Domain Name was registered and is being held in bad faith.'" (*Id.* ¶ 98, 103.) Wayf alleges the WIPO panel "improperly placed the burden of proof on Wayf" in making this determination. (*Id.* ¶ 102.) The panel ordered the Domain Name transferred to GEICO. (*Id.* ¶ 104.)

…

E. **The Domain Registration Agreement And This Lawsuit**

Spaceship's Domain Registration Agreement incorporates the UDRP. (*Id.* ¶ 122.) Under the UDRP, "a domain registrant that loses a UDRP proceeding can challenge the decision and halt the ordered transfer" of the domain name "by filing a lawsuit in the appropriate venue and providing" the domain registrar, within 10 business days after receipt of the UDRP decision, "official documentation (such as a copy of a complaint, file-stamped by the clerk of the court)" that the lawsuit has been commenced. (*Id.* ¶¶ 123-24, citing UDRP ¶ 5.12.)

On February 2, 2026—nine business days after the WIPO panel issued its decision—Wayf initiated this action. (Doc. 1.) The same day, Wayf "notified Spaceship by email that it had filed the lawsuit and provided Spaceship a copy of the [c]omplaint with an official ECF filing receipt" but not a case number, which "was not assigned immediately." (Doc. 10 ¶¶ 130-31.)

On February 4, 2026—11 business days after the WIPO panel issued its decision—Wayf provided a file-stamped copy of the complaint to Spaceship. (*Id.* ¶¶ 132-33.)

On February 10, 2026, "Spaceship confirmed receipt of all [of] the submitted documents, explicitly accepted the documents, and stated that the 'implementation of the UDRP decision ha[d] been paused'" pending the outcome of this lawsuit. (*Id.* ¶ 134.)

F. **The Domain Transfer**

On February 18, 2026, before GEICO was served with the initial complaint, Spaceship transferred the Domain Name to GEICO. (*Id.* ¶ 136.) "Spaceship provided no explanation for why it had changed course." (*Id.* ¶ 137.) Wayf alleges that the transfer was the result of improper influence by GEICO, including "misrepresent[ing] the filing status of the [c]omplaint as well as the requirements for notice under the UDRP policy" and "convinc[ing] Spaceship's legal team, which is believed to be based abroad, that the UDRP requires the registrant to provide a file-stamped copy of a [c]omplaint" to the registrar, as opposed to the materials that Wayf provided. (*Id.* ¶¶ 140, 145.) Wayf alleges that this transfer constituted a breach of the Domain Registration Agreement and the UDRP

by Spaceship. (*Id.* ¶ 140.)

Once the Domain Name was transferred to GEICO, "the Domain Name was no longer in Spaceship's control, and Spaceship could not reverse the transfer." (*Id.* ¶ 139.) GEICO then "moved the Domain Name to a registrar in Germany." (*Id.* ¶ 149.)

II. Procedural History

On February 2, 2026, Wayf initiated this action. (Doc. 1.) In its one-count complaint, Wayf sought declaratory and injunctive relief under the ACPA. (*Id.*)

On April 22, 2026, Wayf filed the FAC, which adds a second claim for tortious interference with Wayf's contract with Spaceship. (Doc. 10 ¶¶ 164-74.)

On June 22, 2026, Wayf filed the pending motion for preliminary injunction. (Doc. 15.) That motion is now fully briefed. (Docs. 18, 20.)

On June 23, 2026, GEICO filed the pending motion to dismiss. (Doc. 16.) That motion is now fully briefed. (Docs. 19, 21.)[1]

## DISCUSSION

I. GEICO's Motion To Dismiss

A. **Legal Standard**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings, Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by

---

[1] GEICO's request for oral argument as to the motion to dismiss (Doc. 21 at 1) is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv. 7.2(f).

mere conclusory statements, do not suffice." *Id.* at 678. The Court may also dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B. **Count One**

In Count One of the FAC, Wayf seeks declaratory and injunctive relief under 15 U.S.C. § 1114(2)(D)(v). (Doc. 10 ¶¶ 150-63.) Under that provision, "a domain name registrant who is aggrieved by an overreaching trademark owner may bring an action to declare that the domain name registration and use is not unlawful under the ACPA's 'cyberpiracy prevention' clause, § 1125(d)." *IFIXITUSA LLC v. iFixit Corp.*, 2022 WL 2117845, *2 (D. Ariz. 2022). "This 'reverse domain hijacking claim,' requires [Wayf] to establish four elements: (1) [Wayf] is the domain name registrant; (2) [Wayf's] domain name was suspended, disabled, or transferred under a policy implemented by a domain name registrar; (3) [GEICO], as the trademark owner seeking the domain name transfer, had notice of the action; and (4) [Wayf's] use or registration of the domain name was not unlawful under the ACPA." *Mira Holdings Inc. v. UHS of Delaware Inc.*, 2023 WL 5333262, *6 (D. Ariz. 2023).

1. <u>The Parties' Arguments</u>

GEICO's motion to dismiss only attacks the sufficiency of Count One as to the fourth element—i.e., whether Wayf's registration of the Domain Name was unlawful under the ACPA. (Doc. 16 at 4.) GEICO contends that for Wayf to satisfy the fourth element, Wayf must plausibly allege either that (1) the Domain Name is not identical or confusingly similar to a distinctive mark; or (2) Wayf did not have a bad faith intent to profit from that mark. (*Id.* at 4, citing *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, 2015 WL 12602438, *8 (D. Ariz. 2015).) GEICO contends that Wayf cannot establish the former because the Domain Name is "identical to GEICO's distinctive marks." (*Id.* at 5.) As for the latter, GEICO notes that "[w]hen evaluating bad faith intent to profit under the ACPA, courts consider nine non-exclusive statutory factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i)" and proceeds to offer arguments as to why those nine factors,

on balance, support a finding of bad faith. (*Id.* at 6-12.) GEICO concludes: "Analyzed through the lens of the bad-faith intent to profit factors, the [FAC] on its face concedes, at the very least, that Wayf registered and seeks to use a domain name featuring the distinctive, registered, and famous GEICO mark, that Wayf has no IP rights in the domain and never used the domain in commerce, that Wayf concealed its identity through a privacy service, and engaged in conduct supporting an inference that the domain's value lay in its leverage over GEICO rather than any legitimate business use. At a minimum, the pleadings foreclose any claim that Wayf can establish lawful registration and use under the ACPA. Count One should therefore be dismissed." (*Id.* at 12.)

In response, Wayf asserts, as an initial matter, that Count One requires "a *de novo* inquiry into the lawfulness of the registration under the ACPA—not a review of the WIPO panel's decision." (Doc. 19 at 5.) Turning to the merits, Wayf does not dispute that it cannot satisfy the first prong of the *Strong College Students Moving* test (i.e., it cannot show that the Domain Name is not identical or confusingly similar to a distinctive mark) but argues that the FAC contains allegations that satisfy the second prong (i.e., the absence of bad-faith intent). (*Id.* at 5-6.) Wayf also contends that courts "routinely deny 12(b)(6) motions in ACPA cases where the pleadings tell a plausible story of innocent adoption." (*Id.* at 6.) Wayf then proceeds to address the nine statutory bad-faith factors. (*Id.* at 7-11.) Finally, Wayf argues that "[e]ven setting aside the factor-by-factor analysis, the ACPA's mandatory safe harbor provision independently forecloses dismissal" and summarizes its position as follows: "Whether [a registrant's belief in the legality of its conduct was] 'reasonable' is an inherently fact-specific inquiry that cannot be resolved at the pleading stage. Wayf's belief was grounded in the independent Chinese linguistic origin of the name and the absence of any prior knowledge of [GEICO]. That good-faith basis is further supported by the parties' distinct commercial fields (gifting platform v. insurance); distinct brand names (Gei & Co. v. GEICO); distinct geographic markets; and the existence of at least eleven distinct parties across the globe that own GEICO-formative trademark registrations. These are specific factual allegations—not mere labels or conclusions—that

plausibly support a reasonable good-faith belief. . . . Whether the safe harbor applies here is a question of fact that must be resolved on a developed record, not on the pleadings alone." (*Id.* at 12, citations omitted.)

In reply, GEICO argues that "Wayf's Opposition boils down to two allegations: (1) that Wayf had never heard of GEICO at the time of registration, and (2) that Wayf has a linguistics-based good-faith reason for choosing [the Domain Name]. Neither fact, even if true, establishes lack of bad-faith intent to profit. But even if they did, the other facts pled in the [FAC] establish that each allegation is implausible, and the Court need not accept them over myriad other pled facts demonstrating the more likely explanation—bad-faith registration." (Doc. 21 at 2.) GEICO also contends the cases cited in Wayf's brief are distinguishable because "each involved registrants with preexisting rights, bona fide use, or identification with the disputed mark or domain name." (*Id.*) Next, GEICO asserts that "[t]he ACPA does not treat a post hoc explanation as dispositive because cybersquatters can often articulate some apparently legitimate reason for selecting a domain." (*Id.* at 3.) Next, GEICO responds to Wayf's arguments regarding the nine statutory factors. (*Id.* at 3-7.) Finally, GEICO argues that the ACPA safe harbor does not apply because even "[a]ccepting as true Wayf's allegation that it had never heard of GEICO before the UDRP proceeding, that allegation does not establish reasonable grounds to believe that registration and use of [the Domain Name] was lawful. The [FAC] alleges that Wayf searched for available domains through its registrar, found numerous 'GeiCo-formative' domains, registered [the Domain Name], and never posted a website, yet seeks a declaration that its 'registration, ownership, and ongoing use' of the domain are lawful. Wayf did not have reasonable grounds to believe its registration was lawful." (*Id.* at 7-8.)

2. <u>Analysis</u>

Although the issue presents a close call, the Court concludes that Wayf has done just enough to avoid dismissal of Count One. The issue presents a close call because most of the relevant statutory bad-faith factors are unfavorable to Wayf, even when all well-pleaded factual allegations in the FAC are accepted as true and even when all reasonable

inferences are drawn in Wayf's favor.

As background, "Congress enumerated a list of nine factors to consider in determining whether a person has a bad faith intent. Congress did not mean these factors to be an exclusive list; instead, the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002) (cleaned up). *See also Anlin Indus., Inc. v. Burgess*, 301 F. App'x 745, 746 (9th Cir. 2008) ("Determining bad faith intent to profit using the nine statutory factors and the 'unique circumstances of the case' is fact dependent."). "The first four factors are circumstances indicating good faith use, the next four factors are circumstances indicating bad faith use, and the last factor can point in either direction." *Blair v. Automobili Lamborghini SpA*, 754 F. Supp. 3d 849, 855 (D. Ariz. 2024).

"The first statutory factor is 'the trademark or other intellectual property rights of the person, if any, in the domain name.'" *Christian Copyright Licensing Int'l LLC v. Multitracks.com LLC*, 2025 WL 1615462, *33 (D. Ariz. 2025). This factor is unfavorable to Wayf—the FAC does not allege that Wayf held any trademark or intellectual property rights in the Domain Name as of May 2025, when registration took place. Wayf does not argue otherwise and only disputes how much weight the first factor should be given. (Doc. 19 at 7.)

"The second statutory factor is 'the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person.'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *33. This factor is also unfavorable to Wayf—the FAC does not allege that Wayf or its founders have ever used the name "Geico" or are otherwise known by that name. Contrary to Wayf's argument, the second factor does not turn on whether the registrant was also "developing a platform under [a] brand name" that is similar to the Domain Name. (Doc. 19 at 7.)

"The third statutory factor is 'the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services.'" *Christian Copyright*

*Licensing Int'l LLC*, 2025 WL 1615462 at *33. This factor "asks whether, at the time of" registration, the registrant "had engaged in 'prior use' of that domain name for the bona fide sale of goods or services." *Id.* This factor is unfavorable to Wayf—the FAC does not allege that Wayf has ever used the Domain Name to sell goods and services, much less that it did so before May 2025. Wayf's argument that "pre-launch registration is entirely consistent with legitimate business development" (Doc. 19 at 7-8) only goes to how much weight the third factor should be afforded, not to how the third factor should be resolved.

"The fourth statutory factor is 'the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name.'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *36. Once again, this factor is unfavorable to Wayf—as GEICO notes, Wayf "admits that its gifting platform remains in development, and that it never posted a website at [the Domain Name]. Nor does Wayf allege any noncommercial or fair use of the domain." (Doc. 16 at 7-8.)

"The fifth statutory factor is 'the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *37. Wayf contends the fifth factor favors it because "likelihood of confusion between an AI corporate gifting platform and an American insurance company is not self-evident." (Doc. 19 at 8.) But as GEICO correctly notes in reply, "[t]he relevant diversion occurs at the domain name level, where internet users are drawn to [the Domain Name] by GEICO's mark before they ever reach any product comparison. Thus, a defendant may violate the ACPA even where it later becomes apparent from the website's content that the site is unaffiliated with the trademark owner." (Doc. 21 at 5.) As one court explained: "A court should not look beyond the domain name to consider the content of the website. The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement. Consequently, even if it might be

evident from the content of the website that it is not sponsored by or affiliated with the plaintiff, there may nonetheless be a violation of the ACPA." *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1032-33 (C.D. Cal. 2010) (cleaned up).

Alternatively, Wayf contends the fifth factor favors it because the FAC "specifically alleges that Wayf's founders had never heard of [GEICO] before the UDRP proceeding." (Doc. 19 at 9.) GEICO does not directly address this argument in reply, although GEICO argues elsewhere that Wayf's professions of ignorance are implausible. Under these circumstances, the Court concludes that the fifth factor, standing alone, is unhelpful in the dismissal calculus, as it merely seeks to evaluate the presence or absence of bad-faith intent—the same issue the remaining factors are also intended to help evaluate. *Cf. Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *38 ("Factor five is rarely discernable directly and must typically be inferred from pertinent facts and circumstances.") (cleaned up).

"The sixth statutory factor is 'the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct.'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *39. This factor favors Wayf at this stage of the proceedings, as the FAC "contains no allegation—nor has [GEICO] identified any—that Wayf ever offered to sell [the Domain Name] to [GEICO] or anyone else." (Doc. 19 at 10.) It is true, as GEICO notes (Doc. 16 at 10), that "an explicit offer to sell to the mark owner is not required," *Blair*, 754 F. Supp. 3d at 859, but here there was not even an implied or indirect offer, as least when the facts alleged in the FAC are construed in the light most favorable to Wayf.

"The seventh statutory factor is 'the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct.'" *Christian Copyright Licensing Int'l LLC*,

2025 WL 1615462 at *39. Here, although it is possible that a factfinder could draw a negative inference from Wayf's use of a privacy service to conceal its identity as the registrant, the Court must accept—at least for purposes of GEICO's motion to dismiss—the FAC's allegation that Spaceship automatically applies the privacy service to all domains, and the Court must also draw reasonable inferences in Wayf's favor. Thus, at least for purposes of GEICO's motion to dismiss, the seventh factor is either neutral or favors Wayf. Tellingly, GEICO acknowledges that "using a proxy service alone is unlikely to support [a] finding of bad faith." (Doc. 16 at 11.)

"The eighth statutory factor is 'the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties.'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *40. In the FAC, Wayf acknowledges that it has also registered certain other "linguistically innovative domain names" in addition to the Domain Name, including <hik.ma> and <wayfindi.ng>. (Doc. 10 ¶ 29.) GEICO has, in turn, come forward with judicially noticeable evidence[2] establishing that the former, <hik.ma>, "is nearly identical to the multibillion-dollar, multinational pharmaceutical brand Hikma" (Doc. 16 at 11), and that the latter, <wayfindi.ng>, "plays on 'WayFinding,' a mark owned by multi-billion-dollar health care company Transcarent for its AI-powered healthcare navigation service." (Doc. 18 at 10).

On the one hand, and as discussed in more detail in the portion of this order addressing Wayf's request for a preliminary injunction, a reasonable factfinder could conclude that this evidence is devastating to Wayf and eviscerates Wayf's contention that

[2] "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

it had no idea, at the time it registered the Domain Name, that a company named GEICO even existed. (Doc. 10 ¶ 29.) It is hard to believe that a company could, by sheer coincidence, choose to register three "linguistically innovative" domain names that just so happen to overlap with the names of three established multi-billion-dollar companies. *Cf. Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) (summary judgment finding of bad-faith intent to profit was supported in part by evidence that the plaintiff had "registered hundreds of domain names resembling distinctive or famous trademarks and has been admonished by judicial bodies for doing so").

On the other hand, it is important not to confuse the distinct roles that a court plays when ruling on a motion to dismiss and a motion for preliminary injunction. In response to GEICO's motion to dismiss, Wayf asserts that the FAC's "explanation of the linguistic origins of each of its domains is a factual allegation the Court must accept as true on this motion" and that GEICO's counterarguments present "at best[] a factual dispute that cannot be resolved in [GEICO's] favor on a motion to dismiss." (Doc. 19 at 10.) The Court agrees. Even though Wayf's arguments regarding the eighth factor may stretch the outer limits of plausibility, and acknowledging that "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense," *Iqbal*, 556 U.S. at 663-64, the eighth factor does not, on this record and at this stage of the case, cut in favor of dismissal.

"The ninth statutory factor is 'the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).'" *Christian Copyright Licensing Int'l LLC*, 2025 WL 1615462 at *41. As to this factor, Wayf does not dispute that GEICO is a longstanding and highly distinctive mark in the United States but argues that "fame in the American insurance market is not the same as global recognition, and the ACPA's bad-faith analysis turns on what Wayf knew or should have known at the time of registration. The [FAC] alleges that neither Wayf nor its principals had ever heard of Defendant before the UDRP proceeding. Wayf is a Polish software company. GEICO does not operate in Poland, does not market to

Polish consumers, and does not provide insurance to Polish citizens." (Doc. 19 at 11.) In reply, GEICO contends that the analysis must focus on the distinctiveness of its mark under U.S. law. (Doc. 21 at 7.) The Court concludes that it is unnecessary to resolve this complicated legal question (to which the parties have dedicated very little briefing) at this stage of the case because the outcome under Rule 12(b)(6) does not turn on the resolution of the ninth factor.

As the preceding analysis shows, most of the relevant factors under § 1125(d)(1)(B) cut against Wayf's position. But it doesn't follow that Count One is therefore subject to dismissal. *Cf. Narayan v. EGL, Inc.*, 616 F.3d 895, 901 (9th Cir. 2010) ("[I]f we are to have multiple factors, we should also have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part.") (citation omitted). As noted, "Congress did not mean these factors to be an exclusive list." *Interstellar Starship Servs. Ltd.*, 304 F.3d at 946. Indeed, "[c]ourts need not march through the nine factors seriatim because their use is merely permissive and the most important grounds for finding bad faith are the unique circumstances of the case." *IFIXITUSA,* 2022 WL 2117845 at *4 (cleaned up). Because the FAC contains well-pleaded factual allegations that Wayf had a legitimate, innocent reason for choosing the name "Gei & Co." and had no knowledge of GEICO's business or marks (due in part to Wayf's presence in Poland), and because there is no indication that Wayf has ever attempted to sell the Domain Name, Wayf has done enough at the pleading stage to allege a lack of bad-faith intent to profit from the GEICO mark and thus avoid dismissal.

C. **Count Two**

In Count Two of the FAC, Wayf asserts a claim for tortious interference with contract. (Doc. 10 ¶¶ 164-74.) Under Arizona law, a "prima facie case of intentional interference requires: (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5)

that the defendant acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 (Ariz. 2002).

Wayf's theory of liability underlying Count Two is that it had a contract with Spaceship; that under that contract, Spaceship was required to "pause[] the transfer of the Domain Name" upon receiving timely notice that Wayf had filed a lawsuit challenging the WIPO panel's decision; that Wayf properly provided such notice by giving Spaceship "a copy of the Complaint along with the official ECF filing receipt" on February 2, 2026; and that GEICO then improperly persuaded Spaceship to disregard this notice and proceed with the transfer. (Doc. 10 ¶¶ 122-49.) As to the final point, the FAC alleges that GEICO "improperly convinced Spaceship's legal team . . . that the UDRP requires the registrant to provide a file-stamped copy of the Complaint to satisfy the notice requirement and halt the implementation of the UDRP decision," when in fact "[t]he UDRP does not require the registrant to provide a file-stamped copy of the Complaint to satisfy the notice requirement and halt the implementation of the UDRP decision" and instead only requires some form of "official documentation." (*Id.* ¶¶ 145-48.)

1. <u>The Parties' Arguments</u>

Although "GEICO disagrees that Wayf has pled facts sufficient to plausibly support that GEICO knew of this contractual relationship or that GEICO acted improperly (it most assuredly did not), for purposes of this 12(b)(6) motion, GEICO focuses on elements 3 and 4, as the allegations put forth in [FAC] establish there has been no breach of contract and Wayf has not been damaged." (Doc. 16 at 14.) As for the element of breach, GEICO advances two theories: first, "the facts pled establish that Wayf did not comply with the UDRP requirement to provide 'official documentation' of the filed suit within 10 days of the panel decision, meaning Spaceship was obligated to transfer the domain"; and second, "even if Wayf could plead such facts, the terms of the agreement still permit Spaceship to transfer the domain for any reason and at its sole discretion, meaning the contract still is not breached." (*Id.* at 14-16.) As for damages, GEICO contends that the FAC's allegation of "damages in an amount to be proven at trial" is a "conclusory allegation" that is

insufficient because Wayf "has not yet launched any business using the Domain Name," has "not yet posted a website at the disputed Domain Name," and "has other domains available to use for its future offering." (*Id.* at 16.) According to GEICO, this shows that, "[a]t most . . . Wayf hoped to use the domain in the future for a still-developing gifting platform." (*Id.*)

In response, Wayf argues that GEICO's first no-breach theory fails because the UDRP provides that implementation of a panel decision will be postponed if the registrant timely provides "official documentation (*such as* a copy of a complaint, file-stamped by the clerk of the court) that [they] have commenced a lawsuit against the complainant" and this language "identifies a file-stamped copy of the complaint as merely an example of the requisite 'official documentation.'" (Doc. 19 at 13-14.) Wayf contends that the filing receipt it provided to Spaceship on February 2, 2026 "constitutes 'official documentation' of the commencement of a lawsuit within any reasonable construction of the UDRP's notice requirements." (*Id.*) Next, Wayf argues that GEICO's second no-breach theory fails because GEICO's proposed reading of § 27 of the Domain Registration Agreement—which Wayf calls a "boilerplate clause"—would "immunize a trademark owner from liability for misrepresenting UDRP requirements to a registrar," would preclude cybersquatting victims from "ever challeng[ing] a wrongful transfer," and would "mean that domain registrants who timely file federal lawsuits can never rely on the UDRP's transfer-pause mechanism—because a registrar can always invoke its general discretion to override its specific UDRP obligations." (*Id.* at 14-16.) Wayf emphasizes that "[a] general reservation-of-rights clause . . . cannot nullify a specific, bargained-for protection that the same contract incorporates by reference." (*Id.*) Finally, as for damages, Wayf argues that the "wrongful transfer" of the Domain Name "deprived Wayf of [its] personal property for which it paid valuable consideration and around which it arranged its branding and business planning." (*Id.* at 16.) Wayf contends that it has "a concrete, cognizable injury—regardless of whether Wayf monetized the domain before the transfer" and that "[t]he inability to quantify lost profits to the cent at the pleading stage does not preclude a claim for damages;

it is precisely the kind of detail to be developed through discovery." (*Id.* at 16-17.)

In reply, GEICO argues that "the Court need not accept" Wayf's "conclusory assertion" that it provided "official documentation" before the 10-day deadline and that Wayf's effort to provide a file-stamped copy of the complaint after the deadline shows that the materials Wayf provided before the deadline were insufficient. (Doc. 21 at 8-9.) As for its second no-breach theory, GEICO reiterates its earlier argument that Spaceship had the ability to "transfer the domain away from Wayf at will" under § 27 of the Domain Registration Agreement and contends that Wayf's "policy arguments and conclusory assertions" are misdirected. (*Id.* at 9.) GEICO also disagrees that § 27 is "merely a 'general reservation-of-rights clause'" that should be given less weight than the UDRP, because although the agreement "incorporates" the UDRP, § 27 "appears in the agreement itself and provides specific, express language addressing [Spaceship's] retained authority to cancel or transfer a domain name registration." (*Id.*) Next, GEICO raises two new arguments: first, that Wayf has not adequately pleaded causation (*id.* at 9-10); and second, that Wayf has not adequately pleaded that GEICO's alleged interference was "improper" (*id.* at 10). Finally, as for damages, GEICO argues that although Wayf "attempts to recast its alleged harm as a 'concrete and cognizable' loss," the FAC does not plausibly allege damages from GEICO's conduct. (*Id.*) Further, GEICO argues Wayf cannot "manufacture damages from a transfer that was lawful under the UDRP and [Spaceship's] agreement." (*Id.*)

2. <u>Analysis</u>

As an initial matter, GEICO expressly stated in its motion that it was only challenging the sufficiency of Count Two as to the elements of breach and damages. (Doc. 16 at 14.) The Court will thus disregard the dismissal arguments that GEICO raised for the first time in its reply brief regarding the elements of causation and impropriety. *See generally Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

As for breach, GEICO's first theory is that because Wayf did not provide Spaceship

with an official, file-stamped version of the complaint within 10 days of receipt of WIPO panel's decision, Spaceship had no corresponding obligation under the UDRP to postpone the transfer. The problem with this argument is that the relevant provision of the UDRP merely identifies a file-stamped version of the complaint as an illustrative example of the sort of "official documentation" that will trigger a postponement: "The UDRP states, in relevant part, that . . . we will wait ten (10) business days . . . after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period *official documentation (such as a copy of a complaint, file-stamped by the clerk of the court*) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. . . . If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision . . . ." (Doc. 10 ¶ 124, emphasis added.) The inclusion of the phrase "such as" in this portion of the UDRP indicates that other forms of "official documentation," separate from a file-stamped version of the complaint, may suffice. *United States v. Technic Servs.*, Inc., 314 F.3d 1031, 1045 (9th Cir. 2002) ("The use of the phrase 'such as' implies that the ensuing list is not exhaustive, but is only illustrative.").

The more complicated question is whether the materials Wayf actually submitted to Spaceship before expiration of the 10-day deadline—namely, a non-file-stamped version of the complaint accompanied by "the official ECF filing receipt, showing that the lawsuit had been filed" (Doc. 10 ¶ 130)—also qualify as "official documentation." Unfortunately, GEICO makes little effort to address this issue in its motion papers. Instead, GEICO's dismissal arguments rest on the faulty premise that the one and only form of "official documentation" that is sufficient to trigger a postponement is a file-stamped copy of the complaint. At any rate, at this early stage of the case, it is sufficient to say that it is plausible that a non-file-stamped version of the complaint accompanied by the official ECF filing receipt would together qualify as the sort of "official documentation" required under the

UDRP.

GEICO's second breach theory fares no better, at least at this stage of the case and on this undeveloped record. GEICO has shown that the relevant contract includes both (1) a provision stating that Spaceship reserves the right, in its discretion, to transfer a domain name for any reason, and (2) a conflicting provision stating that Spaceship "will not implement the Administrative Panel's decision, and we will take no further action" if Spaceship timely receives the sort of "official documentation" discussed above. However, GEICO makes no effort to identify the law that governs the interpretation of this contract, let alone to show how that unspecified jurisdiction's law would resolve such an internal conflict. Furthermore, to the extent both sides invoke the general rule of contractual interpretation that "specific terms and exact terms are given greater weight than general language" (Doc. 19 at 15; Doc. 21 at 9), that principle, if anything, favors Wayf here given that the former provision is a general statement about Spaceship's authority to transfer a domain name while the latter provision deals specifically with the mechanics and timing of implementing a transfer decision by a WIPO panel.

Finally, Wayf has also sufficiently pleaded damages. Although the FAC does not purport to quantify the damages Wayf allegedly sustained from the transfer of the Domain Name—it merely alleges that "[a]s a direct and proximate result of this interference, Wayf . . . has suffered damages in an amount to be proven at trial" (Doc. 10 ¶ 172)—that sort of detail is unnecessary to survive dismissal at the pleading stage. Wayf has alleged that it registered the Domain Name with the expectation of using the Domain Name as part of a new business and that GEICO's challenged conduct deprived it of the ability to use the Domain Name in that manner (and, thus, interfered with its development of the new business). Although Wayf may very well encounter difficulty at a future stage of this case in establishing any lost profits arising from interference with this new business, *see generally McAlister v. Loeb & Loeb, LLP*, 571 P.3d 891, 898 (Ariz. 2025) (acknowledging that "a plaintiff may recover lost profit damages in the context of a new business venture or a prospective business transaction that failed" but clarifying that "it is substantially more

difficult for a new business to establish lost profits damages with reasonable certainty than it is for an established business to do so" and that such "damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like") (cleaned up), at the pleading stage it is sufficient to allege, as Wayf has done here, that the interference has caused as-yet-unquantified harm. *Cf. Jet Packaging Grp., LLC v. Votaw*, 2024 WL 5239888, *10 (M.D. Tenn. 2024) ("The plaintiff must plead damages resulting from the tortious interference. The Complaint alleges that the 'Plaintiff has been damaged by Defendant's tortious interference in an amount to be determined at trial.' The defendant refers to this as 'conclusory,' but otherwise makes no argument that such an allegation of damages is insufficient for an IIBR claim. . . . A plaintiff need not allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations. Thus, the court finds that the plaintiff has adequately pled damages—and, therefore, that the defendant has stated a claim for intentional interference with business relationships.") (cleaned up).

## II. <u>Wayf's Motion For Preliminary Injunction</u>

Wayf seeks a preliminary injunction requiring GEICO to transfer the Domain Name back to Spaceship or, in the alternative, enjoining GEICO from transferring or using the Domain Name pending the outcome of this action. (Doc. 15.)

### A. **Legal Standard**

Preliminary injunctive relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted); *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up). Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

B. **Prohibitory vs. Mandatory Injunction**

The parties disagree whether Wayf seeks a prohibitory or mandatory injunction. "A mandatory injunction orders a responsible party to take action," while "[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878-79 (9th Cir. 2009) (cleaned up). The Ninth Circuit has emphasized that where "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984). The status quo is defined as "the last uncontested status which preceded the pending controversy." *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

Here, identifying the "last uncontested status" is complicated by the fact that the Domain Name was locked at Spaceship at the time Wayf filed its initial complaint but had been transferred to GEICO by the time Wayf filed the FAC (which is the pleading that provides the foundation for Wayf's request for injunctive relief). Although the Ninth Circuit has sometimes looked to the date on which the complaint was filed for purposes of pinpointing the relevant "status quo," *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th

Cir. 1994), it is unclear whether the same approach would be appropriate here, given that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

It is unnecessary to delve too deeply into the prohibitory/mandatory distinction here.[3] Even assuming the requested injunction is prohibitory (which would trigger a more favorable standard for Wayf), the request fails for the reasons discussed below.

C. **Analysis**

The first step in the preliminary injunction analysis is determining whether Wayf has shown a likelihood of success on the merits or at least serious questions going to the merits. *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) ("Likelihood of success on the merits is the most important *Winter* factor and is a threshold inquiry.") (cleaned up). As discussed below, Wayf has not made either showing as to either of its claims. This obviates the need to consider the remaining *Winter* factors. *Id.* ("In the absence of serious questions going to the merits, the court need not consider the other factors.") (cleaned up).

1. Count Two

Wayf argues, in summary fashion, that it is likely to prevail on its tortious inference claim in Count Two. (Doc. 15 at 11-12.) In response, GEICO reiterates the arguments regarding breach and damages it asserted in its motion to dismiss and also asserts the causation and no-improper-conduct arguments it raised for the first time in its reply in support of its motion to dismiss. (Doc. 18 at 6-9.)[4] As for the no-improper-conduct argument specifically, GEICO contends that it merely made factually accurate statements

---

[3] The Ninth Circuit has questioned the utility of the prohibitory/mandatory distinction. *Hernandez v. Sessions*, 872 F.3d 976, 997-98 (9th Cir. 2017). Other circuits have rejected it. *See, e.g.*, *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006) ("Preliminary relief is properly sought only to avert irreparable harm to the moving party. Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there. To worry these questions is merely to fuzz up the legal standard.") (citations omitted); *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) ("[T]he distinction between mandatory and prohibitory injunctive relief is not meaningful.").

[4] Because GEICO properly raised the latter arguments in response to the motion for preliminary injunction, they are not forfeited as they are in relation to the motion to dismiss.

to Spaceship and then advanced legal arguments—which Spaceship's "senior legal team" ultimately accepted—about why Wayf's submission should be viewed as insufficient under the UDRP. (*Id.* at 7-8.) In reply, Wayf argues as follows:

> Defendant's literal-truth defense fails because half-truths mislead: reference to the complaint bearing no file stamp as a "deficiency" misled by omitting that the ECF filing receipt is official documentation (and, in fact, contains an electronic document stamp); "PACER shows no case" misled by suggesting no case had been filed when the filing receipt established otherwise and when filed cases do not appear on PACER until processed; that "Wayf provided no information connecting the purported complaint to the purported filing receipt" and "the case name is 'Plaintiff v. Defendant'" misled because the filing receipt itself provided a connection to the complaint including the filing date, the filing fee and receipt number, the filing attorney, and docket text identifying the parties to the dispute; and "February 2nd [was] the last day" was flatly false."

(Doc. 20 at 5.)

Wayf has not established that it is likely to succeed on, or has even established serious questions going to the merits of, its tortious interference claim. As noted, one of the elements of that claim is that GEICO "acted improperly." *Wells Fargo Bank*, 38 P.3d at 31. "To be improper, an interference must be wrongful by some measure beyond the fact of the interference itself." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 212 (Ariz. 1986) (cleaned up). A defendant does not act improperly where "(1) he has or honestly believes he has a legally protected interest, (2) which he in good faith asserts or threatens to protect, and (3) he threatens to protect it by proper means." *Id.* at 212-13. Here, the record indicates that GEICO honestly believed it had a legally protected interest in the Domain Name and sought to protect that interest by sending, via counsel, a letter to Spaceship. (Doc. 18-2 at 5-6.) That letter included factually accurate statements and advanced GEICO's position as to a disputed legal issue—whether the materials that Wayf sent to Spaceship on February 2, 2026 qualified as "official documentation." Wayf has not identified any case suggesting that the submission of such a letter—which, to be clear, Spaceship's own legal department was free to independently evaluate—constitutes

"improper" conduct for purposes of a tortious interference claim and courts have concluded that analogous conduct was not "improper." *See, e.g.*, *Wesbrook v. Ulrich*, 840 F.3d 388, 395-98 (7th Cir. 2016) (emphasizing that "transmission of truthful information . . . cannot subject one to liability for tortious interference with a contract" and that "a statement may be substantially true—and thus privileged—even if some fine splitting of semantic hairs might leave room to argue about its literal truth" and concluding that defendants were entitled to summary judgment on tortious interference claim where "the statements on which Wesbrook bases his claims against Ulrich and Belongia were each true or substantially true") (cleaned up); *Loftus v. Nazari*, 21 F. Supp. 3d 849, 854 (E.D. Ky. 2014) (rejecting tortious interference claim where the challenged statements constituted the defendant's "protected opinion" and there was "no evidence that Ms. Nazari did not honestly believe the opinions she set forth"). *See also Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 695 (Ariz. Ct. App. 2007) ("A business-driven motive, in and of itself, is not an improper motive. Indeed, Arizona courts have held that a business competitor does not act improperly if its purpose at least in part is to advance its own economic interests.") (cleaned up).

2. Count One

Wayf contends it is likely to prevail on Count One. (Doc. 15 at 12-15.) In support, Wayf essentially reiterates the discussion of the nine statutory factors set forth in its opposition to GEICO's motion to dismiss. (*Id.*) Similarly, GEICO's responsive arguments largely track its motion-to-dismiss arguments as to the nine statutory factors. (Doc. 18 at 9-13.) In reply, Wayf reiterates its earlier arguments. (Doc. 20 at 6-9.)

Wayf has not established that it is likely to succeed on, or has even established serious questions going to the merits of, Count One. As discussed in earlier portions of this order, Wayf has done just enough to avoid dismissal of Count One when all of Wayf's well-pleaded factual allegations are accepted as true and all reasonable inferences are resolved in Wayf's favor. But the Court need not uncritically accept all of Wayf's factual avowals and resolve all inferences in Wayf's favor when assessing Wayf's entitlement to

a preliminary injunction. And under the standards of review applicable in this context, the record tips in GEICO's favor. Wayf registered the Domain Name via a privacy service that obscured its true identity (the seventh statutory factor) despite lacking any trademark or other intellectual property rights in the Domain Name (the first statutory factor), despite lacking any natural connection to the Domain Name (the second statutory factor), and despite never previously using the Domain Name (the third and fourth statutory factors). Furthermore, although Wayf's principals assert that they had never heard of GEICO before the UDRP proceeding (Doc. 15-3 ¶ 23; Doc. 15-4 ¶ 7), those assertions need not be accepted at face value for preliminary-injunction purposes and are difficult to reconcile with the evidence that Wayf has also registered certain other "linguistically innovative domain names" that overlap with the names of established multi-billion-dollar companies (the eighth statutory factor) and with the fact that GEICO is a distinctive mark (the ninth statutory factor). A factfinder not bound by the standards governing the consideration of a Rule 12(b)(6) motion would likely conclude that the evidence, on balance, undermines Wayf's assertion that it acted without a bad faith intent to profit or may otherwise take advantage of the safe harbor. *Cf. Lahoti*, 586 F.3d at 1202-03.

Accordingly,

**IT IS ORDERED** that:

1. Wayf's request for a preliminary injunction (Doc. 15) is **denied**.
2. GEICO's motion to dismiss (Doc. 16) is **denied.**

Dated this 15th day of October, 2026.

Dominic W. Lanza
United States District Judge